Stephen Costen, to prove the loss of receipt.

Isaac Marshall. In 1801 Stephen Costen showed me a bill of goods and receipt at the bottom by Josiah Prideaux in which Bratton's note was mentioned.

Josiah Fisher. I saw the receipt. I think it was in full and that there were two witnesses.

James Gordon. I saw the receipt. It was in full.

*Wilson,* for plaintiff, in the opening.

*Bayard* for defendant. The note was certainly to pay for the goods. The only question now is whether we are answerable in consequence of the assumpsit. We contend we are not,—unless Prideaux had used all due diligence, [he] could not recover. The only method of showing due diligence is that of showing a suit to recover or insolvency.

*Wilson* in conclusion. The obligor was dead, and his estate in the hands of the Chancellor, therefore no suit was necessary. Esp.N.P. 167.

CHIEF JUSTICE. If special agreement proved, plaintiff may recover. If defendant became liable as indorser, it was also necessary to make him so for plaintiff to prove he brought a suit to recover, a statute, bankruptcy or insolvency.

Verdict for defendant.

**JOHN and GEORGE WILLIAMS, Infants, by their Friend, WARNER POLYN, v. B. WALTON and MARY, his Wife, and J. HERRINGTON.**

Court of Common Pleas. Sussex. November 23, 1803.

*Rodney's Notes.*

*Bayard* [for plaintiffs]. *Wilson* [for defendants].

Elizabeth Jones. I knew John Williams. He died at his house, September 18 past, on Sunday. The Friday before, he said if

it should please God to take him he had a desire that his brother's two sons, John and George, should own his property. I nursed him in his sickness. He appeared to me to have a sound mind; he appeared to be serious. Eli Maclin and Nancy Townsend were present. He repeated those words in the morning to me, and told me to remember. Toward Saturday and Sunday, he thought he had the yellow fever, and I believe he had. Maclin rode up to the gate and he requested me to ask him to walk in.

Cross-examined. He had not been talking any about his estate. Were talking of his future state. He kept store. Clandaniel had his goods. He used to talk in his health of leaving his property to John and George. I know it was his will and desire.

Eli Maclin. I knew John Williams. He died on Sunday. The Friday before, I was going by. Mrs. Jones told me Mr. Williams wanted to see me. I went in, and John Townsend's wife came in. He said he was very sick, but said he was not willing to die because he was afraid his property would not go to his brother James' sons which he wished. He said there were so many dishonest men he was afraid they would not get it. I believe he intended they should have it, and that what he said then should have that effect. I promised to go and see him next Sunday, but he was dead. He appeared to me to be in his perfect senses. He said he wanted his inkstand, but he was not able to use it to set down some goods he'd sold. I expect he called me to hear what he had to say about his property.

Cross-examined. Don't remember he requested me to take notice "as his last will and testament." The others were sitting by him, though he was talking to me about religion, and he raised the discourse, telling me how he wished his property to go.

Nancy Townsend. I knew J. W., was there Friday with E. M. and E. Jones. I heard him say he wished his brother's two sons to have his property if it should please God to take him; he appeared very solemn, and in his proper senses. I have heard him say the same in his health.

Cross-examined. I believe he desired it to be his last will, did not tell me to take notice.

*Wilson* for defendants. Act of Assembly, [1 Del.Laws] 344. No nuncupative will exceeding £50 or unless it should be proved by two witnesses, etc.

Isaac Beachamp, Esq. Mrs. Jones told me Williams desired his property should go to his brother's two sons, and his sister's children. Don't remember he told me to take notice this was his will.

Thomas Cliften. I was with Mr. Beachamp, did not hear Mrs. Jones tell him any of the property was to go to his sister's children.

*Horsey.* We shall contend that we have shown by three witnesses that John Williams's will is sufficient to pass his property under the Act.

*Wilson* for setting aside the will. Whether John Williams made a will according to the Act, the property may be worth £400. It is not enough that a man should say he wished a certain person to have his property. It is absolutely necessary that two witnesses should concur as to the words or facts which will establish a nuncupative will. No evidence that Williams told them he was making his will so as to have effect. 2 Bl.Comm. 500, 501. Statute [of] Frauds laid many restrictions on verbal wills.

*Bayard* in support of the will. If a man makes use of such words, as expresses his intention to dispose of his property, whether he calls it his will or not, the law will so adjudge it to be.

CHIEF JUSTICE. Such words should be proved by two witnesses as will satisfy your minds John Williams intended to give the property to his nephews.

Verdict for plaintiff (to establish the will) after being up a few minutes.

## ELSEY SPICER'S LESSEE v. JOHN CONAWAY.

Court of Common Pleas. November 25, 1803.

*Rodney's Notes.*

*Bayard, Wilson* [for plaintiff]. *Ridgely* [for defendant].